# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Lazaro Manuel Rodriguez, | * |
| | * |
| Plaintiff, | * |
| v. | *   Case No: 2017 CV 23563 |
| | * |
| | * |
| Andrew Hague, in his official capacity as | * |
| County Criminal Court Judge of Florida's 11th | * |
| Judicial Circuit; Harvey Ruvin, in his official | * |
| capacity as Clerk of the Courts for Miami-Dade | * |
| County; Richard Swearingen, in his official | * |
| capacity as Commissioner of the Florida | * |
| Department of Law Enforcement, | * |
| | * |
| Defendants. | * |
| | * |

**COMPLAINT**

1

## INTRODUCTION

1. Plaintiff Lazaro Rodriguez was accused by Miami-Dade police officers of two misdemeanor counts of resisting an officer without violence and a felony of threatening a public servant in Miami-Dade County in December 2015. Because he could not afford an attorney, the court appointed a public defender at Mr. Rodriguez's first appearance. Mr. Rodriguez's attorney immediately asserted Mr. Rodriguez's right to a jury trial. The attorney also argued that the felony charge was legally insufficient and convinced the court not to require bail on this count, which the State subsequently dropped.

2. But two months later, after his public defender had done significant, additional work on his case, Defendant Judge Andrew Hague removed counsel—over counsel's objection—when the prosecution declared that it would not seek jail time. Defendant Hague removed the public defender without meaningfully evaluating the circumstances of Mr. Rodriguez's case or the potential prejudice that Mr. Rodriguez might suffer from counsel's removal.

3. Defendant Hague is one of the few criminal court judges of the Eleventh Judicial Circuit of Florida who routinely removes the public defender whenever the State declares that it will not seek jail time. As in Mr. Rodriguez's case, Hague typically fails to evaluate the individual circumstances of a particular case or the potential prejudice indigent defendants may face if forced to represent themselves at trial or in plea bargaining. His practice effectively allows the prosecution to decide whether indigent defendants charged with misdemeanors will have representation.

4. Mr. Rodriguez appeared for trial on April 27, 2016, without a lawyer. Speaking through a Spanish interpreter, Mr. Rodriguez inadvertently signed a waiver of his right to a jury trial.

5. The prosecution's case centered on the testimony of two of the arresting officers. They asserted that Mr. Rodriguez argued with them and stiffened his body while they were attempting to arrest him during a traffic stop. Unsurprisingly, Mr. Rodriguez was incapable of effectively confronting their testimony, both because he did not understand how to investigate his case prior to trial and because he did not know how to ask proper cross-examination questions. Making matters worse, Defendant Hague repeatedly admonished Mr. Rodriguez for asking improper questions during his cross-examination of the officers.

6. Following a trial that lasted barely 90 minutes, Defendant Hague convicted Mr. Rodriguez of one count of misdemeanor resisting an officer without violence and sentenced him to $358 in court costs. Mr. Rodriguez did not appeal the conviction or fine because Defendant Hague did not advise Mr. Rodriguez of his right to appeal, and Mr. Rodriguez had no lawyer to correct this omission or to independently inform Mr. Rodriguez of his right to appeal.

7. Mr. Rodriguez's uncounseled conviction and sentence is a fate that only befalls the indigent. Had Mr. Rodriguez been able to afford a private attorney, he could have hired counsel to represent him throughout the proceedings, without fear of the court removing his attorney simply because the State was not seeking jail time.

8. Defendants Harvey Ruvin and Richard Swearingen maintain records of convictions at the Office of the Clerk of the Courts for Miami-Dade County and the Florida Department of Law Enforcement, respectively. Defendants make the records available to government agencies and private actors, who in turn use the records as a basis for immigration decisions and excluding individuals from public benefits, employment and housing opportunities.

9. Plaintiff Lazaro Rodriguez brings this action under 42 U.S.C. § 1983, seeking a declaratory judgment that Defendants' entry and maintenance of his conviction violates his

Fourteenth Amendment right to due process and the equal protection of the laws, as well as his Sixth and Fourteenth Amendment rights to counsel.

10. Plaintiff seeks injunctive relief requiring Defendants to invalidate Plaintiff's conviction.

## JURISDICTION AND VENUE

11. Plaintiff's claims arise under the Constitution and laws of the United States. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

12. The federal rights asserted by Plaintiff are enforceable under 42 U.S.C. § 1983.

13. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57 and 65.

14. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b). Plaintiff and two of the three Defendants reside in this judicial district. Most of the acts and omissions by Defendants giving rise to this action occurred in this judicial district.

## PARTIES

*Plaintiff*

15. Plaintiff is a resident of Miami-Dade County in the State of Florida.

*Defendants*

16. Defendant Andrew Hague is a County Criminal Court Judge for Florida's 11th Judicial Circuit, located in Miami-Dade County. He is sued in his official capacity for declaratory relief. Upon information and belief, he is domiciled in the Southern District of Florida.

17. Defendant Harvey Ruvin is the Clerk of the Courts for Miami-Dade County. He is custodian of all court records, including records of criminal convictions in county court. Defendant Ruvin provides electronic access to private actors through a searchable database on the Internet. He is sued in his official capacity for declaratory and injunctive relief. Upon information and belief, he is domiciled in the Southern District of Florida.

18. Defendant Richard Swearingen is Commissioner of the Florida Department of Law Enforcement ("FDLE"). He is responsible for the FDLE's Criminal Justice Information Services ("CJIS"), the central repository of criminal history records for the State of Florida. Agencies and private actors use CJIS to identify criminal arrests and convictions for purposes of employment, licensing, and other determinations. He is sued in his official capacity for declaratory and injunctive relief. Upon information and belief he is domiciled in the Northern District of Florida.

## FACTS

19. Mr. Rodriguez is a 58-year-old Latino man who lives with his wife and son in North Miami. He works at a convenience store.

20. Following a traffic stop for speeding, Mr. Rodriguez was arrested in the predawn hours of December 17, 2015, and charged with two misdemeanor counts of resisting an officer without violence and a felony count of threatening a public servant.

21. Mr. Rodriguez had his first appearance later on the afternoon of December 17. Because he could not afford an attorney, Judge Mindy S. Glazer appointed a public defender from the Miami-Dade County Public Defender's Office. On behalf of Mr. Rodriguez, the public defender filed an acknowledgment of appointment, a written plea of not guilty, and a demand for a trial by jury. The attorney also argued that the prosecution lacked probable cause on the felony charge and convinced the court to release Mr. Rodriguez on his own recognizance on this count.

22. At Mr. Rodriguez's arraignment on January 15, 2016, the prosecution dropped the felony charge and one of the misdemeanor charges. The remaining misdemeanor charge was transferred to the County Court, Criminal Division.

23. On January 19, 2016, Mr. Rodriguez's public defender filed a notice of discovery and demand for a trial by jury. Arraignment on the new case was scheduled for February 18.

24. On February 4, the public defender interviewed Mr. Rodriguez about his misdemeanor case, obtained the name and contact information of defense witnesses, and began formulating a defense strategy.

25. On February 17, the public defender filed a motion to compel the State to comply with discovery, accompanied by a motion to depose State witnesses.

26. On February 19, at Mr. Rodriguez's arraignment, the prosecution declared that it would not seek jail time. Accordingly, Defendant Hague entered an order precluding incarceration and discharged the public defender from Mr. Rodriguez's case pursuant to Rule 3.111 of the Florida Rules of Criminal Procedure. Plaintiff's counsel objected, asserting that Mr. Rodriguez would be unduly prejudiced by the removal of counsel, and requested a hearing to establish that disadvantage.

27. The Court removed counsel without a hearing and without otherwise meaningfully evaluating the individual circumstances of Mr. Rodriguez's case, or the potential prejudice that removing counsel might cause. The Court set trial for March 23, 2016.

28. Mr. Rodriguez wished to proceed with the assistance of counsel but remained unable to afford a private attorney. Without a legal background, he was unable to continue the work his counsel had commenced or to otherwise develop his defense.

29. The Court never ruled on the public defender's motions to compel discovery and for depositions. Mr. Rodriguez did not know how to revive those motions, and, even if he did, he would not have had the training needed to understand and develop discovery through these means. Mr. Rodriguez did not know how to prepare for trial or how to represent himself.

30. On March 23, the prosecution requested a continuance because it had not located one of the police officer witnesses. Trial was reset for April 27. Electronic subpoenas were issued for six police officers.

*Plaintiff's Bench Trial without Counsel*

31. On April 27, Mr. Rodriguez was convicted following a bench trial before Defendant Judge Andrew Hague in the Miami-Dade County Court, Criminal Division. The trial lasted roughly 90 minutes. Mr. Rodriguez did not have the assistance of counsel at any point.

32. The prosecution appeared in the courtroom with multiple police officers. Mr. Rodriguez indicated that he needed a Spanish language interpreter, which Defendant Hague provided. Defendant Hague made no inquiry into Mr. Rodriguez's ability to represent himself.

33. The judge informed Mr. Rodriguez that he was charged with resisting an officer without violence and recited the elements of that offense. He informed Mr. Rodriguez that the prosecution's "offer was an adjudication with $358 court costs and I'll give you one year to pay it." When Mr. Rodriguez maintained his innocence and refused to accept the offer, the judge told the State to call its first witness. Hague briefly explained how the bench trial would proceed.

34. The State then reminded the Court needed to obtain a waiver of Mr. Rodriguez's jury trial right. Hague did not explain Mr. Rodriguez's right to a jury trial, evaluate whether Mr. Rodriguez understood the potential benefits and risks of a jury trial, or assess if Mr. Rodriguez could competently conduct a jury trial if it was to his advantage. The judge's only question to Mr.

Rodriguez was: "Um, sir, do you wish to have a trial in front of me or do you wish to have, eh, um, have a jury hear your case?"

35.     Mr. Rodriguez responded, in part, "I don't need a jury in front of you." Though the precise meaning of this statement is unclear, the Defendant Hague did not seek to clarify Mr. Rodriguez's understanding of his right to a jury trial. Hague instead assumed Mr. Rodriguez wanted to forgo a jury and ordered a short recess for Mr. Rodriguez to sign a waiver form.

36.     Before trial began, Mr. Rodriguez observed several police officers in court that he remembered from the incident. He believed these individuals might provide information helpful to his defense. However, the prosecution excused these witnesses, and they left the courtroom. Mr. Rodriguez did not know how to contact these individuals, request to depose them, or call them as his witnesses.

37.     The State presented two of the arresting police officers as witnesses. Mr. Rodriguez presented his wife, who was in the car with him on the day of the incident.

38.     Mr. Rodriguez did not understand how to question the officers on cross examination and instead tried to assert his version of events. Defendant Hague repeatedly reprimanded Mr. Rodriguez for not asking appropriately phrased questions. Mr. Rodriguez was also hindered by having to speak through and wait for interpretation.

39.     At one point, Mr. Rodriguez asked the judge, "How can I ask a question when the things he is saying are not truthful? What are the questions?" Later, after being reprimanded again by the judge for not phrasing sentences as questions, Mr. Rodriguez asked a testifying officer, "Ok, the question is have you said all the truth?"

40. The prosecution and Mr. Rodriguez both gave closing arguments. The prosecution summarized the testimony presented and pointed the judge to the facts relevant to the elements of the charge of misdemeanor resisting an officer without violence.

41. Mr. Rodriguez gave his closing argument through an interpreter. His closing argument summarized no testimony or relevant facts. Instead, he expressed concern that he was made to sound dishonest. He said he had not been to law school, so he did not know how to represent himself, and that was why he had asked the officers whether they were telling the truth.

42. When he started to explain that he had been in his underwear at the time of his arrest because his pants had fallen down, the State objected on relevance. Mr. Rodriguez did not understand how to respond to the objection, for instance, by asserting that the information was relevant because he was trying to pull his pants up during the arrest, not resist the arrest. Defendant Hague sustained the objection and prohibited Mr. Rodriguez from finishing his argument.

43. Defendant Hague found Mr. Rodriguez guilty and sentenced him to $358 in court costs. He also issued a no contact order, directing Mr. Rodriguez to stay away from the police officers.

44. Following trial, Defendant Hague did not advise Mr. Rodriguez about his right to an appeal, or the fact that Mr. Rodriguez would have the right to counsel for an appeal. Mr. Rodriguez therefore never sought an appeal, and the time for him to do so under Florida law has expired. Mr. Rodriguez's conviction is final and he has no right to appeal under Florida law.

45. Mr. Rodriguez's conviction was entered into databases in Miami-Dade County and the Florida Department of Law Enforcement.

46. As custodians of the record of conviction, Defendants Ruvin and Swearingen maintain and enforce Mr. Rodriguez's conviction in their official records and on their searchable

databases, enabling access by agencies and private actors to Mr. Rodriguez's record for purposes of denying him housing, employment, and other opportunities.

*The Order of No Incarceration ("ONI") Procedure*

47.     Florida Rule of Criminal Procedure 3.111 authorizes a court to remove counsel for an indigent defendant in a misdemeanor case if, at least 15 days prior to trial, the court enters a written order of no incarceration ("ONI"), certifying that the defendant will not be incarcerated. If the court issues an ONI in a case in which counsel has already been appointed, the Rule further provides that the court may not discharge appointed counsel if the defendant would be substantially disadvantaged by the discharge.

48.     Defendant Judge Hague is one of the few criminal court judges in Miami-Dade County Court who removes public defenders based solely on the certification that the State will not seek jail time. Defendant Hague removes counsel without any independent review of the case or individual circumstances, or of whether removing counsel would prejudice the defendant. Thus, indigent defendants have been frequently stripped of public defenders that have spent weeks, even months, preparing a case. Hague's practice allows prosecutors to control the right to counsel for indigent misdemeanor defendants.

49.      Removing the public defender provides the prosecution an enormous advantage over defendants who, having proclaimed their innocence throughout the proceedings, must now confront the State alone. Uncounseled, many of these defendants subsequently waive their rights to jury trial and accept plea offers that waive their rights to appeal. The rest, like Mr. Rodriguez, are vastly overmatched at trial.

50.     Defendants' maintenance and enforcement of these convictions result in severe collateral consequences. Especially for indigent defendants, the consequences of conviction are

often more debilitating than a modest jail sentence. These consequences include immigration detention and/or deportation, or the loss of a job, home, custody of children, public benefits, professional licenses, driver's licenses, and more. Depending on the defendant's financial circumstances, the fine may expose them to jailing for nonpayment.

51. By contrast, wealthier defendants who can afford to retain a private attorney enjoy the assistance of counsel until the conclusion of their case.

## CLAIMS FOR RELIEF

*Count 1: Fourteenth Amendment Right to Due Process and Equal Protection*

52. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53. Criminal defendants in Miami-Dade County Court who can afford private counsel have unfettered access to the assistance of counsel for critical defense functions, including the decision to waive their rights to jury trial. But because of his poverty, Plaintiff could not access these protections after Defendant Hague discharged his appointed counsel.

54. Indigent defendants have a right to counsel on appeal under Florida law, regardless of whether they were incarcerated upon conviction. Yet indigent defendants at trial are not guaranteed the assistance of counsel if they do not face incarceration, rendering any appeal of an uncounseled conviction a meaningless ritual because counsel is unavailable to preserve appellate issues at trial and to advise the defendant about the right to appeal.

55. Defendant Hague's policy of removing public defenders creates a dual criminal justice system based on wealth, such that criminal defendants are treated differently based on their ability to pay for an attorney. This policy invidiously discriminates against Plaintiff and deprives

him of his fundamental right to counsel and of a meaningful opportunity to access the courts, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

56.     Because Plaintiff's conviction was unlawfully obtained, Defendants' maintenance and enforcement of that conviction record constitutes an ongoing and continuing violation of his Fourteenth Amendment right to due process and equal protection.

*Count 2: Sixth and Fourteenth Amendment Right to Counsel*

57.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

58.     Plaintiff is too poor to afford private counsel and faces numerous collateral consequences as a result of conviction. Plaintiff had a right to counsel to defend him.

59.     Plaintiff was charged with a non-petty offense. Plaintiff had a right to a jury trial and a right to counsel to prepare for trial and to engage in plea negotiations with the prosecution.

60.     At the time Defendant Hague discharged Plaintiff's public defender, defense counsel had done substantial work on Mr. Rodriguez's behalf, including invoking Mr. Rodriguez's right to a jury trial, requesting discovery from the State and to depose State witnesses, and interviewing Mr. Rodriguez to obtain the names of potential defense witnesses and to begin formulating a defense strategy.

61.     Following Defendant Hague's discharge of the public defender, Mr. Rodriguez could not adequately represent himself. For instance, he did not understand how to pursue discovery from the prosecution or seek to depose state witnesses, and he unwittingly waived his right to a jury trial.

62. Accordingly, Defendant Hague's discharge of the public defender who had already done substantial work Plaintiff's case violated his right to counsel under the Sixth and Fourteenth Amendments.

63. Because Plaintiff's conviction was unlawfully obtained, Defendants' maintenance and enforcement of that conviction record constitutes an ongoing and continuing violation of his Sixth and Fourteenth Amendment rights to counsel.

*Count 3: Fourteenth Amendment Right to Due Process*

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Plaintiff, as well as every other criminal defendant, has the right to a fair trial before the State brands him with a criminal conviction, particularly given the numerous collateral consequences that result from a conviction.

66. Additionally, Plaintiff's case involved complex legal issues beyond the abilities of a layperson. Based on the individual circumstances of Plaintiff's case and the prejudice he would suffer if Defendant Hague removed the public defender, the assistance of counsel was necessary to ensure the fairness of the proceedings.

67. The discharge of counsel under these circumstances, without an individualized evaluation of Plaintiff's case or a finding that the discharge of counsel would not cause undue prejudice to Plaintiff, violates Plaintiff's right to due process under the Fourteenth Amendment.

68. Because Plaintiff's conviction was unlawfully obtained, Defendants' maintenance and enforcement of that conviction record constitutes an ongoing and continuing violation of his Fourteenth Amendment right to due process.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

a. Enter a declaratory judgment establishing that Defendants' entry, maintenance and enforcement of Plaintiff's record of conviction invidiously discriminates against Plaintiff based on wealth, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

b. Enter a declaratory judgment establishing that Defendants' entry, maintenance and enforcement of Plaintiff's record of conviction violates Plaintiff's Sixth and Fourteenth Amendment right to the assistance of counsel.

c. Enter a declaratory judgment establishing that Defendants' entry, maintenance and enforcement of Plaintiff's record of conviction violates Plaintiff's right to due process under the Fourteenth Amendment.

d. Issue a permanent injunction requiring Defendants Ruvin and Swearingen to invalidate Plaintiff's conviction such that no collateral consequences result from that record.

e. Award costs and attorney's fees pursuant to 42 U.S.C. § 1988.

f. Grant or award any other relief this Court deems just and proper.

This the 28th day of September, 2017.

Respectfully submitted,

_s/ *Jacqueline Nicole Azis*_____
Nancy G. Abudu
Florida Bar #111881
Jacqueline Nicole Azis
Florida Bar #101057

ACLU Foundation of Florida, Inc.
4343 West Flagler St., Suite 400
Miami, FL 33134
786-363-2714 (phone)
786-363-1257 (fax)
nabudu@aclufl.org
jazis@aclufl.org


Brandon J. Buskey*
Ezekiel Edwards*
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY  10004
212-284-7364
bbuskey@aclu.org
eedwards@aclu.org
* Pro Hac Vice

15