UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:17-cv-23563-UU

LAZARO MANUEL RODRIGUEZ,

    Plaintiff,

v.

ANDREW HAGUE,

    Defendant.

_____/

**ORDER**

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure (the "Motion"). D.E. 14.

THE COURT has considered the Motion and the pertinent portions of the record, and is otherwise fully advised in the premises.

**BACKGROUND**

The following allegations are taken from Plaintiff's Complaint. D.E. 1.

In December 2015, Plaintiff was charged with one count of threatening a public servant and two counts of resisting an officer without violence in Miami-Dade County. D.E. 1 ¶ 1. Due to his financial status, the court appointed Plaintiff a public defender at his first court appearance. *Id.* Plaintiff's public defender asserted Plaintiff's right to a jury trial and argued that the charge for threatening a public servant, which is a felony, was legally insufficient. *Id.* The Court released Plaintiff without bond. *Id.* At Plaintiff's arraignment on January 15, 2016, the prosecution dismissed the singular felony charge and one of the misdemeanor charges against Plaintiff. *Id.* ¶ 22. The case was then transferred to the County Court, Criminal Division. *Id.*

1

At Plaintiff's February 17, 2016 criminal court arraignment, after his public defender had done "significant" work on his case, the prosecution declared that it would not seek a jail sentence in Plaintiff's case. *Id.* ¶ 2, 26. Consequently, the Defendant "entered an order precluding incarceration and discharged the public defender from [Plaintiff's] case pursuant to Rule 3.111 of the Florida Rules of Criminal Procedure.[1] *Id.* ¶ 26. Rule 3.111 authorizes a court to remove counsel for an indigent defendant in a misdemeanor case if, at least fifteen days prior to trial, the court enters a written order of no incarceration, certifying that the defendant will not be incarcerated. *Id.* ¶ 47. If the court issues such an order in a case in which counsel has already been appointed, the Rule further provides that the court may not discharge appointed counsel if the defendant would be substantially disadvantaged by the discharge. *Id*. According to Plaintiff, the Defendant "removed the public defender without meaningfully evaluating the circumstances of [Plaintiff's] case or the potential prejudice that [Plaintiff] might suffer from counsel's removal." *Id.* ¶ 2, 26. Plaintiff's trial was set for March 23, 2016. *Id.* ¶ 27. Plaintiff states that he wished to proceed with the assistance of counsel but remained unable to afford a private attorney. *Id.* ¶ 28. According to Plaintiff, "[w]ithout legal background, he was unable to continue the work his counsel had commenced or to otherwise develop his defense."[2] *Id.* "The Court never ruled on the public defender's [previously filed] motions to compel discovery and for depositions. [Plaintiff] did not know how to revive the motions, and even if he did, he would not have the training needed to understand and develop discovery." *Id.* ¶ 29. On the March 23, 2016 trial date, the prosecution was granted a continuance and the trial was reset for April 27, 2016. *Id.* ¶ 30.

---

[1] Plaintiff does not challenge the constitutionality of Rule 3.111.
[2] Plaintiff does not include any information about what, if anything, he did do to continue the work of his counsel.

On April 27, 2016, Plaintiff appeared *pro se* for trial. *Id.* ¶ 4. Plaintiff indicated that he needed a Spanish language interpreter, which Defendant provided to him. *Id.* ¶ 32. However, Plaintiff claims that Defendant "made no inquiry into [Plaintiff's] ability to represent himself." *Id.* Defendant explained the prosecution's offer to Plaintiff, stating that it was "an adjudication with $358 court costs", and that the Plaintiff would be given a year to pay such costs. *Id.* ¶ 33. Plaintiff declined the offer. *Id.* Defendant then "explained how the bench trial would proceed" and directed the Prosecution to call its first witness. *Id.* ¶ 34. At that point, the State "reminded the Court needed [sic] to obtain a waiver of [Plaintiff's] jury trial right." *Id.* ¶ 34. According to Plaintiff, the Defendant "did not explain [Plaintiff's] right to a jury trial, evaluate whether [Plaintiff] understood the potential benefits and risks of a jury trial, or assess if [Plaintiff] could competently conduct a jury trial if it was to his advantage." *Id.* Plaintiff claims that the Defendant simply asked whether he wished to have a trial in front of him or a jury. *Id.* In response to Defendant's inquiry, Plaintiff said: "I don't need a jury trial in front of you." *Id.* ¶ 35. Plaintiff then signed the waiver of jury trial. *Id.*

The prosecution called two police officers to testify. *Id.* ¶ 37. Plaintiff called his wife, who was present at the time of the incident, to testify on his behalf. *Id.* Plaintiff claims that he was "incapable of effectively confronting the [officers'] testimony, both because he did not understand how to investigate his case prior to trial and because he did not know how to ask proper cross-examination questions. *Id.* ¶ 5. Making matters worse, Defendant Hague admonished [Plaintiff] for asking improper questions during his cross-examination[s]." *Id.* However, there was no jury present as the case was tried as a bench trial. Plaintiff further claims that he was "hindered by having to speak through and wait for interpretation." *Id.* ¶ 38.

3

Both Plaintiff and the prosecution delivered closing arguments. *Id.* ¶ 40-41. Unlike Plaintiff's closing argument, the prosecution's closing focused on the facts elicited at trial and the elements of the charge against Plaintiff. *Id.* At one point, the prosecution made an objection to Plaintiff's closing argument, which the Defendant sustained. *Id.* According to Plaintiff, the Defendant then "prohibited [Plaintiff] from finishing his argument."[3] *Id.* At the conclusion of the trial, which lasted approximately ninety minutes, the Defendant found Plaintiff guilty of the misdemeanor charge against him and sentenced Plaintiff to $358 in courts costs. *Id.* ¶ 6, 43. Defendant also issued a "no contact order", directing Plaintiff to stay away from the police officers. *Id.* ¶ 43. Plaintiff claims that the Defendant "did not advise [him] about his right to an appeal, or the fact that [he] would have the right to counsel for an appeal. [Plaintiff] therefore never sought an appeal, and the time for him to do so under Florida law has expired. [Plaintiff's] conviction is final and he has no right to appeal under Florida law." *Id.* ¶ 44.

Plaintiff's conviction was "entered into a database in Miami-Dade County and the Florida Department of Law Enforcement." *Id.* ¶ 45. Plaintiff claims that his "uncounseled conviction and sentence is a fate that only befalls the indigent. Had [Plaintiff] been able to afford a private attorney, he could have hired counsel to represent him throughout the proceedings, without fear of the court removing his attorney" because the state was not seeking a jail sentence.[4] *Id.* ¶ 7. The Office of the Clerk of the Courts for Miami-Dade County and the Florida Department of Law Enforcement "maintain records of convictions" and "make the records available to government agencies and private actors, who in turn use the records as a basis for immigration

---

[3] It is unclear if Plaintiff is alleging that Defendant did not allow him to finish his closing argument or his argument in response to the prosecution's objection.
[4] Plaintiff asserts that the Defendant "is one of the few criminal court judges in Miami-Dade County Court who removes public defenders based solely on the certification that the State will not seek jail time. Defendant Hague removes counsel without any independent review of the case or individual circumstances, or of whether removing counsel would prejudice the defendant." D.E. 1 ¶ 48. According to Plaintiff, Defendant's "practice allows prosecutors to control the right to counsel for indigent misdemeanor defendants. Removing the public defender provides the prosecution an enormous advantage over defendants." *Id.* ¶ 49.

decisions and excluding individuals from public benefits, employment and housing opportunities." *Id.* ¶ 8.

Based on these underlying allegations, Plaintiff brings a Fourteenth Amendment Due Process and Equal Protection Claim (Count I), a Sixth and Fourteenth Amendment Right to Counsel claim (Count II), and a Fourteenth Amendment Right to Due Process claim (Counts III) against Defendant, all pursuant to 42 U.S.C. § 1983. Plaintiff seeks a declaratory judgment that Defendant's "entry and maintenance of his conviction" violates his constitutional rights, and seeks injunctive relief "requiring Defendant[] to invalidate Plaintiff's conviction." D.E. 1 ¶ 9-10. Defendant filed the instant Motion to Dismiss on December 12, 2017. For the reasons set forth below, Defendant's Motion is GRANTED.

## LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679.

## ANALYSIS

I. <u>Standing</u>

Defendant argues that Plaintiff's claims against him should be dismissed for lack of standing because Plaintiff has failed to allege the existence of a case or controversy. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Federal courts are confined by Article III of the Constitution to adjudicating only actual "cases" and "controversies." [5] *Id.* To successfully allege a case or controversy, Plaintiff "must allege facts from which the continuation of the dispute may reasonably be inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* (internal quotations omitted). Accordingly, in order for the Court to have jurisdiction over the instant matter, Plaintiff "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1446 (11th Cir. 1999) (internal citations omitted). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory

---

[5] Similarly, the Declaratory Judgment act, 28 U.S.C § 2201, specifically provides that a declaratory judgment may be issued only in the case of an actual controversy. *Allen,* 268 U.S. at 750 (*citing Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985).

judgments." *Allen*, 468 U.S. at 750 (*citing Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).

After reviewing the Complaint, the Court finds that it does not contain sufficient factual allegations to establish that there is a substantial likelihood that Plaintiff will be subject to continuing or future injury as a result of Defendant's conduct. Plaintiff only alleges that criminal defendants who are convicted following the removal of their public defender face severe collateral consequences such as "immigration detention and/or deportation, or the loss of a job, home, custody of children, public benefits, professional licenses, driver's licenses, and more." D.E. 1 ¶ 49-50. Accordingly, while the Complaint makes reference to the collateral consequences an indigent defendant may face following the removal of his attorney, Plaintiff fails to allege that he will suffer or repeatedly suffer future collateral consequences as a result of Defendant's conduct. While Plaintiff alleges that the Defendant violated his constitutional rights by removing his attorney before trial, "'[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects.'" *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (*quoting City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). As such, the Complaint does not sufficiently allege that Plaintiff faces the kind of "real and immediate" threat necessary to confer standing. *Malowney*, 193 F.3d at 1446. *See also De Luna v. Hidalago County, Tex.*, 853 F.Supp.2d 623, 636 (S.D. Tex. 2012). Consequently, Plaintiff does not have the requisite standing to obtain the equitable relief he seeks here. Plaintiff's claims against Defendant, therefore, are DISMISSED for lack of standing.

II. Eleventh Amendment Immunity

Assuming, *arguendo*, that Plaintiff has standing, his claims would also fail because

the Defendant is entitled to sovereign immunity. Plaintiff brings his three § 1983 claims against Defendant "in his official capacity". Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (*quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)). As such, "there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Given that Defendant is an agent of the state of Florida, the instant matter is functionally a § 1983 suit against the state. *Graham*, 473 U.S. at 166. While section 1983 provides a federal forum to remedy many deprivations of civil liberties, "it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived immunity or unless Congress has exercised its undoubted power…to override that immunity." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).

In his Response (D.E. 17), Plaintiff argues that "although the Eleventh Amendment prohibits suit against the State itself, the *Ex parte Young* doctrine permits suits for prospective relief against state officers in their official capacity based on allegations of ongoing constitutional violations." D.E. 17 at *16 (*citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, n.10 (1989)). *See also Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff argues that his claim is cognizable under *Ex parte Young* because he is seeking a declaratory judgment against Defendant that would "compel" Defendant "to cease enforcing his conviction in a manner that causes collateral consequences." *Id.* However, Plaintiff cannot meet the requirements for an *Ex parte Young* claim for the same reason he was unable establish standing. *See supra* Section I.

8

The Eleventh Amendment bars suit against a State by citizens of that same state. *Papasain v. Allain*, 478 U.S. 265, 276 (1986) (*citing Hans v. Louisiana*, 134 U.S. 1 (1890). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This bar exists whether the relief sought is legal or equitable." *Id.* (*quoting Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100-101 (1984). However, where a state official is named as a defendant, "the Eleventh Amendment status of the suit is less straightforward". *Id. Ex parte Young* held that a suit to enjoin as unconstitutional a state official's actions was not barred by the Eleventh Amendment. "This holding was based on the determination that an unconstitutional state enactment is void and that any actions by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity." *Id.* Thus, a state official, although acting in his official capacity, may be sued in federal court. *Id.* (internal citations omitted).

However, the *Ex parte Young* doctrine does not insulate from Eleventh Amendment challenge every suit brought against a state official. *Young* applies to "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past". *Id.* at 277-78. Accordingly, to determine whether a claim avoids an Eleventh Amendment bar to suit under *Young*, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation omitted). "Declaratory relief is not prospective as required by the *Ex parte Young* doctrine when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot

9

be properly characterized as prospective." *Taylor-Tillotson v. Florida Dept. of Children & Families Circuit 15, Palm Beach Unit*, 2013 WL 6050968, at *4 (S.D. Fla. Nov. 14, 2013) (internal citations omitted). As explained in Section I *supra*, Plaintiff's factual allegations solely focus on his past misdemeanor prosecution which culminated in a conviction in April 2016. Plaintiff does not make a single allegation of an ongoing violation of federal law. *Verizon Md., Inc.*, 535 at 645. Indeed, Plaintiff requests injunctive relief "to invalidate [his] conviction", relief which can only be characterized as retroactive. D.E. 1. at *14. Accordingly, the *Ex parte Young* exception to Eleventh Amendment immunity is not applicable in the instant matter as all of Plaintiff's claims for injunctive and declaratory relief "seek to remedy alleged wrongs in his state court prosecution…These are completed 'past wrongs' for purposes of applying the *Ex parte Young* doctrine." *Brown v. Turner*, 2017 WL 3836077, at *4 (N.D. Ala. July 21, 2017), report and recommendation adopted, 2017 WL 3781621 (N.D. Ala. Aug. 31, 2017). Plaintiff's claims are, therefore, DISMISSED WITH PREJUDICE.

   III. *Rooker-Feldman* Doctrine

Assuming, *arguendo*, that Plaintiff's claims are not barred by the Eleventh Amendment, and that Plaintiff has standing to bring suit here, Defendant argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. *Id.* "A claim is inextricably

intertwined if it would "effectively nullify" the state court judgment, or it "succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal citations omitted). While the Supreme Court has noted the "narrowness" of the rule, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292 (2005) (*Rooker–Feldman* does not apply to parallel state and federal litigation); *Verizon Md. Inc..*, 535 U.S. 635, 644, n. 3 (*Rooker-Feldman* "has no application to judicial review of executive action, including determinations made by a state administrative agency"); *Johnson v. De Grandy,* 512 U.S. 997, 1005–1006 (1994) (*Rooker–Feldman* does not bar actions by a nonparty to the earlier state suit), they have also confirmed that it continues to apply with full force to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

After examining the Complaint, the Court finds that Plaintiff directly challenges his state criminal conviction. Throughout his Complaint, Plaintiff alleges that his conviction "was unlawfully obtained" (D.E. 1 ¶ 56, 63, 68) and ultimately, requests an injunction "to invalidate [his] conviction" (Id. at *14). As such, the instant matter falls squarely within the *Rooker-Feldman* doctrine because Plaintiff is asking the Court to "nullify" the state court judgment, a request which can only be granted if the Court rules that Defendant wrongly decided the issues. *Casale,* 558 F.3d at 1260. *See also Alvarez v. Attorney General of Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012) (finding that *Rooker-Feldman* barred Plaintiff's claim "that the Florida courts erroneously *applied* and *interpreted* Florida's concededly constitutional procedures in deciding his case.") (emphasis in original). Plaintiff attempts to side-step this jurisdictional issue by arguing for the first time in his Response "[t]hat the relief in this case does not require nullifying

11

Plaintiff's conviction" because "an acceptable remedy is to preserve the conviction, but to remove its improper consequences." D.E. 17 at *21. Citing *Alabama v. Shelton*, 535 U.S. 654 (2002), Plaintiff argues that "if the Court concludes that Defendant Hague's determination of guilt is not reliable enough to warrant collateral consequences, the Court could affirm the conviction, but require the state to protect Plaintiff from its collateral consequences." D.E. 17 at *21. This argument is both contradictory and illogical. To begin with, Plaintiff asserts that the Court should rule that the Defendant's "determination of [Plaintiff's] guilt is not reliable". As such, Plaintiff is specifically asking the Court to determine that "the state court wrongly decided the issue" of guilt, which is in complete contravention of the *Rooker-Feldman* doctrine. *Alvarez*, 679 F.3d at 1263 (*quoting Casale,* 558 F.3d at 1260 (11th Cir. 2009). Moreover, the Court has no idea what it means to "require the state to protect Plaintiff from its collateral consequences". Earlier in his Response, Plaintiff suggests that the Defendant "could delete Plaintiff's conviction from [his] records, or…seal or expunge the record." D.E. 17 at *21. However, Plaintiff did not request such relief in his Complaint and cannot amend his complaint through a response to a motion to dismiss. *Burgess v. Religious Technology Center, Inc.*, 600 Fed.Appx. 657, 665 (11th Cir. 2015) (*citing Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009). Furthermore, Plaintiff does not cite a single authority to support his contention that this Court has the ability to: (i) order a State court judge to "delete" a conviction or "seal or expunge" a defendant's record"; or (ii) "require the state to protect Plaintiff from its collateral consequences" while upholding the underlying conviction. D.E. 17 at *21. Finally, *Shelton*—the case on which Plaintiff bases his argument—is wholly inapplicable to the instant matter. There, the defendant elected to represent himself at his criminal trial. "The court repeatedly warned [the defendant] about the problems self-representation entailed, but at no time offered him assistance of counsel at state expense."

12

*Shelton*, 535 U.S. at 1765. The defendant was ultimately convicted of a misdemeanor and sentenced to a thirty-day jail term, which the trial court immediately suspended, placing him instead on two years of unsupervised probation. On appeal, the Alabama Supreme Court reversed the defendant's suspended jail sentence because Supreme Court jurisprudence "require[s] provision of counsel in any petty offense, misdemeanor, or felony prosecution that actually leads to imprisonment even for a brief period." *Id.* (internal quotations omitted). According to the Alabama Supreme Court, "because a defendant may not be imprisoned absent provision of counsel, [the defendant's] suspended sentence could never be activated and was therefore invalid." *Id.* The Supreme Court affirmed. *Shelton* is distinguishable from the instant matter because there, the defendant solely challenged his sentence, not his underlying conviction. Consequently, any ruling by the Supreme Court as to the constitutionality of the defendant's sentence would not invalidate his criminal conviction. In the instant matter, Plaintiff does not challenge his sentence[6], but instead specifically requests that the Court "invalidate [his] conviction" by ruling that Defendant erroneously applied Rule 3.111 of the Florida Rules of Criminal Procedure, the constitutionality of which Plaintiff does not challenge in his Complaint. *Alvarez*, 679 F.3d at 1262-63 (finding that the district court lacked subject matter jurisdiction over Plaintiff's claim that the trial court incorrectly applied Florida law pursuant to the *Rooker-Feldman* doctrine). Accordingly, given that the success of Plaintiff's claims before this Court would 'effectively nullify' the state court judgment and are only cognizable "to the extent that the state court wrongly decided the issues", Plaintiff's claims are

---

[6] In his Response, Plaintiff states that he "does not challenge his sentence of court costs; thus, this punishment may remain in place." D.E. 17 at *21.

barred by the *Rooker-Feldman* doctrine.[7] The task of reviewing the state court's final judgment "is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale,* 558 F.3d at 1260. Plaintiff's claims against Defendant are, therefore, DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss, D.E. 14, is GRANTED. It is further

ORDERED AND ADJUDGED that the Complaint, D.E. 1, is DISMISSED WITH PREJUDICE and this case is CLOSED.

DONE AND ORDERED in Chambers in Miami, Florida, this 8th day of February, 2018.

*[signature]*
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

---

[7] If Plaintiff believed that the state court's result was based on a legal error, he could have raised such issue on direct appeal. However, Plaintiff did not timely appeal his conviction and is now time-barred from doing so. Plaintiff's failure to utilize his state court remedies does not create jurisdiction here.